**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| **CONSUMER FINANCIAL PROTECTION BUREAU,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| v. | ) ) | **Civil Action No. 1:14-cv-00292-SEB-TAB** |
| **ITT EDUCATIONAL SERVICES, INC.,** | ) ) | |
| **Defendant.** | ) ) | |

**DEFENDANT ITT EDUCATIONAL SERVICES, INC.'S**
**MOTION TO STAY DISCOVERY PENDING A RULING ON ITS**
**MOTION TO DISMISS; AND MEMORANDUM IN SUPPORT**

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure and the Court's discretion to control discovery, Defendant ITT Educational Services, Inc. ("ITT"), through counsel, respectfully moves for a stay of discovery, including disclosures, until this Court resolves ITT's pending motion to dismiss.

**INTRODUCTION**

ITT moved to dismiss the complaint filed by the Consumer Financial Protection Bureau (the "Bureau") in its entirety, and that motion is now pending before the Court. The Bureau agrees that ITT's motion raises "significant constitutional issues and issues of statutory interpretation dealing with the Bureau's organization and authority under the Bureau's enabling statute," as well as numerous "complex . . . matters of first impression." Joint Mot. Enlargement Time (D.E. 18) at 1-2. Those issues present pure questions of law that could end or substantially limit this litigation. Moreover, the Bureau already has obtained voluminous discovery from ITT—exceeding 123,000 pages—during its pre-suit investigation, and ITT incurred extensive costs to produce that discovery. The Bureau also has obtained significant non-judicial discovery

from third parties.  There is good cause to avoid the burdens of additional and potentially

unnecessary discovery while the Court resolves the complex threshold issues in this case.

## BACKGROUND

*1. The Bureau Has Taken Extensive Civil Investigative Discovery.*  The Bureau issued

its first civil investigative demand ("CID") to ITT on May 18, 2012.  The CID included 45

interrogatories with 95 subparts, 50 document requests with 67 subparts, and 8 requests for

written reports with 23 subparts, all seeking information covering a broad spectrum of ITT's

business practices nationally and at ITT's individual campuses over a four-year period.[1]

Although ITT raised and preserved its objections to the Bureau's authority and to the burden

imposed by the CID, ITT worked diligently to respond, producing approximately 80,000 pages

of documents in just over two months.  At that point, the Bureau required ITT to file written

objections to the Bureau's requests by August 6, 2012 or else waive those objections, so ITT

filed a petition to set aside the CID in accordance with the Bureau's procedures.

After a delay of more than a year, the Bureau withdrew its first CID and issued a second

CID on September 13, 2013.[2]  Although the new CID also was burdensome, ITT again made

great efforts to cooperate with the Bureau's demands, producing more than 40,000 additional

pages of documents, as well as requested written reports, in little over two months.  ITT also

agreed to toll any statutory deadlines applicable to the Bureau's potential claims against ITT.[3]

ITT is not fully informed as to the Bureau's investigation, but it appears that during this

time the Bureau also deposed and collected documents from third parties.  Moreover, the Bureau

apparently had access to additional documents that ITT had produced to the Securities and

Exchange Commission.

---

[1] A copy of the May 18, 2012 CID is attached as Exhibit 1 hereto.
[2] A copy of the September 13, 2013 CID is attached as Exhibit 2 hereto.
[3] A copy of the Tolling Agreement is attached as Exhibit 3 hereto.

Even before confirming receipt of ITT's latest document production, the Bureau

informed ITT that it was contemplating filing an enforcement action.  On December 20, 2013,

the Bureau provided ITT with a high-level, verbal overview of the anticipated claims.  ITT

submitted a 59-page, written response on January 17, 2014, providing the Bureau with legal

arguments and additional documents.

    *2.  **The Bureau Decided To End Its Investigation And File This Lawsuit**.  The Bureau*

chose not to continue investigating ITT through CIDs, but instead to file this lawsuit on February

26, 2014.  (D.E. 1.)

Even after filing this action, however, the Bureau continued to collect information.  As

ITT was preparing its response to the Bureau's complaint, ITT learned that the Bureau was

actively soliciting ITT employees for additional information.  In fact, the Bureau made

presumably unintentional contacts with current ITT employees, asking them to submit to in-

person interviews.  ITT requested that the Bureau provide the names of all ITT employees it had

contacted and intended to contact, so that ITT could assist the Bureau in avoiding inadvertent

communications with current employees as it continued its investigation.[4]  The Bureau has not

substantively responded to ITT's request.[5]

ITT timely filed a motion to dismiss the complaint in its entirety.  (D.E. 15, 16, 23.)

Among other grounds for dismissal, ITT argues that the Bureau's structure violates the

Constitution's separation of powers and the procedure for appointing the Bureau's Deputy

Director violates the Appointments Clause.  ITT also argues that the Bureau lacks enforcement

authority over entities not engaged in consumer finance, and that the Consumer Financial

---

[4]  A copy of the April 3, 2014 letter from Jason Mendro to the Bureau's Cynthia Gooen Lesser
is attached as Exhibit 4 hereto.
[5]  A copy of the April 4, 2014 letter from the Bureau's Cynthia Gooen Lesser to Jason Mendro
is attached as Exhibit 5 hereto.

Protection Act's ("CFPA") purported prohibitions on "unfairness" and "abusiveness" fail to provide adequate notice of prohibited conduct under the Due Process Clause and fail to comport with constitutional nondelegation principles.  Further, ITT argues that the complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(7) for failure to name indispensable parties—the third-party lenders who issued the private educational loans at issue—and that the asserted counts fail to state a facially plausible claim for which relief can be granted.

On April 29, 2014, the Bureau asked ITT's counsel if ITT would consent to extending the Bureau's deadline to respond to the motion to dismiss.  The parties thereafter filed a joint motion to extend the deadlines for the Bureau's response and ITT's reply.  (D.E. 18.)  The parties agreed that an extension was appropriate in view of the "significant constitutional issues and issues of statutory interpretation dealing with the Bureau's organization and authority under the Bureau's enabling statute," including "complex . . . matters of first impression."  Joint Mot. Enlargement Time (D.E. 18) at 1-2.

*3.  The Bureau Intends To Take Additional, Sweeping Discovery.*  On May 13, 2014, the parties participated in a meet-and-confer session regarding the Case Management Plan.  The Bureau stated that it intends to take additional discovery as soon as possible, and identified several wide-ranging topics of discovery, including, but not limited to:  files regarding 8,600 students; the training and compensation of ITT's financial aid coordinators; student default rates and job placement; and graduate income.  The Bureau also stated that its discovery would not be bounded by the time limitations of its claims, and that it would seek discovery from ITT's corporate headquarters and potentially each of its more than 140 campuses nationwide.  The Bureau agreed that, due to the complexity of the case, none of the discovery tracks of the

Uniform Case Management Plan template is adequate and that any deadlines necessarily would have to be extended and revised as the case progresses.  The Bureau proposed a trial in 2016.

ITT stated that further discovery would be premature in light of ITT's pending motion to dismiss.  ITT explained that the Bureau's contemplated discovery was broad and would be enormously burdensome and expensive for ITT, and that ITT should not have to incur that burden and expense when it may prove to be unnecessary.  Accordingly, ITT stated that it intended to move for a stay of discovery and requested the Bureau's consent.  The Bureau refused consent.  The Bureau also stated it was disinclined to share any of the costs of discovery.  Although it left open the possibility that it would consider the matter further, the Bureau thus far has not committed to covering any of the expense its discovery requests would impose on ITT.

## ARGUMENT

The Court should stay discovery pending resolution of ITT's motion to dismiss.

### A.     ITT's Motion To Dismiss Raises Issues Of Law That Would Terminate Or Substantially Limit This Litigation.

Courts have broad discretion to limit the scope of discovery or control its sequence.  Fed. R. Civ. P. 26(c) & (d); *Brown-Bey v. United States*, 720 F.2d 467, 470 (7th Cir. 1983); *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 336 (N.D. Ill. 2005).  In particular, "'[l]imitation or postponement of discovery may be appropriate when a defendant files a motion to dismiss for failure to state a claim on which relief can be granted,'" and "'such stays are granted with substantial frequency.'"  *Dillinger, LLC v. Elec. Arts, Inc.*, 2010 WL 1945739, at *1 (S.D. Ind. May 11, 2010) (quoting *In re Sulfuric Acid*, 231 F.R.D. at 336).[6]  Indeed, "[f]ollowing the Supreme Court's recent adoption of a more rigorous pleading standard to spare defendants the

---

[6]   *See also Nexstar Broad., Inc. v. Granite Broad. Corp.*, 2011 WL 4345432, at *3 (N.D. Ind. Sept. 15, 2011); *Simstad v. Scheub*, 2008 WL 1914268, at *1-2 (N.D. Ind. Apr. 29, 2008); *Bodnar v. John Hancock Funds, Inc.*, 2007 WL 1577914, at *2-3 (N.D. Ind. May 30, 2007); *Novelty, Inc. v. Tandy*, 2005 WL 2253599, at *4 (S.D. Ind. Sept. 1, 2005).

costs of discovery into meritless claims, such stays issue with even greater frequency." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007)); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009) (where a complaint is deficient under Fed. R. Civ. P. 8, a plaintiff "is not entitled to discovery, cabined or otherwise").

ITT has raised numerous threshold challenges that could end this litigation without need for further discovery.  Both parties agree that these threshold challenges raise "significant constitutional issues and issues of statutory interpretation dealing with the Bureau's organization and authority under the Bureau's enabling statute," and that these issues "are complex and are matters of first impression."  Joint Mot. Enlargement Time (D.E. 18) at 1-2.  The resolution of these issues has the potential to terminate or limit the scope of litigation—and thus, discovery— even if the Court grants ITT's motion only in part.  Any further discovery while ITT's motion to dismiss is pending thus would be premature and would risk wasting the Court's and the parties' resources.

In short, because the Bureau's ability to maintain this action in the face of ITT's significant legal and constitutional challenges is in substantial doubt, good cause exists to stay discovery until this Court has had an opportunity to decide the threshold legal issues.

**B.      ITT Should Not Be Required To Engage In Costly And Burdensome Discovery Unnecessarily.**

ITT should not be required to incur the expense of providing further discovery when the Court may dismiss or limit the Bureau's claims.  The Federal Rules expressly authorize courts to limit the scope of discovery or control its sequence to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1); *see Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *Tamburo v. Dworkin*, 2010 WL 4867346, at *1 (N.D. Ill. Nov.17, 2010).  District courts in the Seventh Circuit frequently stay discovery

pending the outcome of motions to dismiss where the complex nature of the claims or the scope of the proposed discovery would subject defendants to undue burdens. *See, e.g.*, *Nexstar*, 2011 WL 4345432, at *3; *Coss v. Playtex Prods., LLC*, 2009 WL 1455358, at *4-5 (N.D. Ill. May 21, 2009). After *Twombly* and *Iqbal*, "the policy against burdensome discovery in complex cases during the pendency of a motion to dismiss holds fast," requiring district courts carefully to consider the potential discovery needed in complex cases. *Coss*, 2009 WL 1455358, at *3. A stay is particularly appropriate where the breadth of discovery sought is "especially burdensome and costly" or "extensive, voluminous, and expensive to produce." *DSM Desotech Inc. v. 3D Sys. Corp.*, 2008 WL 4812440, at *2-3 (N.D. Ill. Oct. 28, 2008).

That rule should apply here. The Bureau has stated that the additional discovery it seeks will be nationwide in scope, involving potentially all of ITT's more than 140 campuses in 38 states, in addition to ITT's corporate headquarters. Although the Bureau's CFPA counts relate only to the period from July 21, 2011 through December 2011, the Bureau intends to seek discovery for broad periods both before July 2011 and after December 2011. The Bureau also intends to seek records pertaining to *8,600 students*. By seeking personal information relating to ITT's students, the Bureau may trigger onerous statutory obligations under the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g, potentially subjecting ITT to the burden of making manual redactions to protected information or providing notice to thousands of affected students. These requirements could radically expand the cost of discovery (as they have already increased the cost of producing documents to the Bureau during its investigation). Furthermore, the Bureau intends to seek training and employment information regarding ITT financial aid staff, as well as ITT's communications with students, over an extended period. Most of the information that the Bureau seeks consists of electronically stored information—

discovery that typically "require[s] more intensive judicial involvement than required by conventional discovery."  Barbara J. Rothstein, Ronald J. Hedges, and Elizabeth C. Wiggins, *Managing Discovery of Electronic Information: A Pocket Guide for Judges* 2 (2007).  The costs and difficulties of providing such discovery would be staggering for any company; for a small company like ITT, they could be crippling.

If the Bureau lacks constitutional authority or statutory jurisdiction over ITT, or if the Bureau has failed to state a facially plausible claim on which relief can be granted, then the Bureau "is not entitled to discovery"—deferred or otherwise—and ITT should not have to incur further burden or expense in defending these unwarranted claims.  *Iqbal*, 556 U.S. at 686.  The burdensome nature of the Bureau's proposed discovery provides further good cause to stay discovery until ITT's preliminary legal challenges have been decided.

**C.      The Bureau Will Not Be Prejudiced If Discovery Is Stayed.**

The Bureau clearly will not be prejudiced if further discovery is deferred pending the Court's decision of ITT's motion to dismiss.

*First*, the Bureau *already* has taken voluminous discovery from ITT.  The Bureau has the benefit of more than 123,000 pages of documents and reports previously produced by ITT, and it also had the benefit of previewing ITT's legal arguments before deciding whether and when to file this lawsuit.  The Bureau also has taken deposition testimony and obtained documents from third parties, and apparently has access to documents that ITT produced to other agencies and regulators.  These factors give the Bureau a distinct advantage over run-of-the-mill civil litigants and militate in favor of staying discovery until threshold legal challenges are decided.

*Second*, immediate discovery is not necessary to protect third parties or preserve claims. No students could be harmed by deferring discovery in this matter, since the core claims of the complaint relate to third-party loan programs that ceased extending loans in 2011, as the Bureau

concedes.  Compl. (D.E. 1), ¶¶ 120, 132, 165, 173, 182.[7]  Notably, the Bureau has not sought

emergency injunctive relief, and its preliminary proposal of a trial date in 2016 is a tacit

acknowledgement that neither the Bureau nor third parties will be harmed by deferring discovery

during this early stage of the litigation.

     *Third*, the Bureau cannot argue that it needs further discovery to respond to the issues

raised in ITT's motion to dismiss.  The Bureau has agreed to a briefing schedule under which its

opposition is due weeks before any Case Management Plan will be submitted.  *See Orlando*

*Residence, Ltd. v. GP Credit Co.*, 2006 WL 2849866, at *7 (E.D. Wis. Sept. 29, 2006)

("Limitations on pretrial discovery are appropriate where claims may be dismissed based on

legal determinations that could not have been altered by any further discovery.") (internal

quotation marks omitted).

     *Fourth*, the Bureau could have used its CIDs to obtain the discovery it now seeks, before

filing a complaint.  Indeed, before the Bureau filed this lawsuit, ITT entered into a tolling

agreement under which the Bureau was free to continue its investigation and request additional

documents, reports, or other information from ITT without sacrificing the Bureau's legal rights.

Instead, the Bureau opted to forgo further investigation and file this lawsuit with full knowledge

that ITT would raise threshold legal challenges and that the ability to obtain further discovery

during the pendency of ITT's motion to dismiss would be committed to the Court's sound

discretion.

*      *      *

---

[7]  The Bureau's only claim that concerns ongoing activity rests on the implausible characterization of ITT's *express discount offers* as *undisclosed fees* to students who declined them.  Compl. (D.E. 1), ¶¶ 188-90; *see also* Br. Supp. Def.'s Mot. to Dismiss (D.E. 23) at 33-35.

The Bureau must undertake sufficient pre-litigation investigation to ensure that its "enforcement actions, if required, are well supported."[8]  Similarly, the Federal Trade Commission, from which the Bureau assumed enforcement authority, requires that its staff "make extensive use of compulsory process" in pre-litigation investigations and that "[t]he evidence should be sufficient to establish a likelihood of success" *before* an enforcement action is brought.[9]  Thus, in bringing this action, the Bureau evidently believed that its claims were "well supported" by evidence already in its possession, and should not be permitted to use discovery pending resolution of the motion to dismiss to place an undue burden on ITT or conduct a fishing expedition.

## CONCLUSION

ITT respectfully requests the Court to stay discovery, including disclosures, pending resolution of ITT's motion to dismiss.

Dated:   June 4, 2014                                 Respectfully submitted,

                                                      ICE MILLER, LLP

                                                      By:    /s/ *Philip A. Whistler*
                                                          Philip A. Whistler (#1205-49)

                                                      Thomas E. Mixdorf (#16812-49)
                                                      One American Square, Suite 2900
                                                      Indianapolis, IN  46282-0200
                                                      Telephone:  (317) 236-2100
                                                      Facsimile: (317) 236-2219
                                                      Philip.Whistler@icemiller.com
                                                      Thomas.Mixdorf@icemiller.com

---

[8]  CFPB Supervision and Examination Manual (Oct. 2012), Examinations 11, http://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf.
[9]  Federal Trade Commission Operating Manual, ch. 11.5.5, at 23, http://www.ftc.gov/sites/default/files/attachments/ftc-administrative-staff-manuals/ch11judiciaryenforcement.pdf.

GIBSON, DUNN & CRUTCHER LLP
Timothy J. Hatch (*pro hac vice* pending)
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
Facsimile:  (213) 229-7520
THatch@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
Douglas R. Cox (*pro hac vice* pending)
Jason J. Mendro (*pro hac vice* pending)
Lucas C. Townsend (*pro hac vice* pending)
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: (202) 955-8500
Facsimile:  (202) 467-0539
DCox@gibsondunn.com
JMendro@gibsondunn.com
LTownsend@gibsondunn.com

*Attorneys for Defendant*
*ITT Educational Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2014, a copy of the foregoing Defendant ITT Educational Services, Inc.'s Motion To Stay Discovery Pending A Ruling On Its Motion To Dismiss; And Memorandum In Support, including the accompanying exhibits, was filed electronically.  Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ *Philip A. Whistler*

Philip A. Whistler