# Exhibit 4

# Consumer Compliance Handbook

**Division of Consumer and Community Affairs**



3. The agreement currently is not offered to the public and the agreement is for one or more plans offered to test a new product offered only to a limited group of consumers for a limited time that involves fewer than 10,000 open accounts.

## Reevaluation of Rate Increases—Section 1026.59

For any rate increase imposed on or after January 1, 2009, that requires 45 days advance notice, the regulation requires card issuers to review the account no less frequently than once each six months and, if appropriate based on that review, reduce the annual percentage rate. The requirement to reevaluate rate increases applies both to increases in annual percentage rates based on consumer-specific factors, such as changes in the consumer's creditworthiness, and to increases in annual percentage rates imposed based on factors that are not specific to the consumer, such as changes in market conditions or the issuer's cost of funds. If based on its review a card issuer is required to reduce the rate applicable to an account, the final regulation requires that the rate be reduced within 45 days after completion of the evaluation.

This review must consider either the same factors on which the increase was originally based or the factors the card issuer currently considers in determining the annual percentage rate applicable to similar new credit card accounts.

## Specific Defenses—TILA Section 108

*Defense Against Civil, Criminal, and Administrative Actions*

A financial institution in violation of TILA may avoid liability by

- discovering the error before an action is brought against the financial institution, or before the consumer notifies the financial institution, in writing, of the error;
- notifying the consumer of the error within 60 days of discovery;
- making the necessary adjustments to the consumer's account, also within 60 days of discovery. (The consumer will pay no more than the lesser of the finance charge actually disclosed or the dollar equivalent of the APR actually disclosed.)

The above three actions also may allow the financial institution to avoid a regulatory order to reimburse the customer.

An error is "discovered" if it is

- discussed in a final, written report of examination
- identified through the financial institution's own procedures
- an inaccurately disclosed APR or finance charge included in a regulatory agency notification to the financial institution

When a disclosure error occurs, the financial institution is not required to re-disclose after a loan has been consummated or an account has been opened. If the financial institution corrects a disclosure error by merely re-disclosing required information accurately, without adjusting the consumer's account, the financial institution may still be subject to civil liability and an order to reimburse from its regulator.

The circumstances under which a financial institution may avoid liability under the TILA do not apply to violations of the Fair Credit Billing Act (chapter 4 of the TILA).

*Additional Defenses Against Civil Actions*

The financial institution may avoid liability in a civil action if it shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error that occurred despite the maintenance of procedures to avoid the error.

A bona fide error may include a clerical, calculation, computer malfunction, programming, or printing error. It does not include an error of legal judgment.

Showing that a violation occurred unintentionally could be difficult if the financial institution is unable to produce evidence that explicitly indicates it has an internal controls program designed to ensure compliance. The financial institution's demonstrated commitment to compliance and its adoption of policies and procedures to detect errors before disclosures are furnished to consumers could strengthen its defense.

## Statute of Limitations—TILA Sections 108, 129, 129B, 129C, and 130

Civil actions may be brought within one year after the violation occurred. For private education loans, civil actions may be brought within one year from the date on which the first regular payment of principal and interest is due. After that time, and if allowed by state law, the consumer may still assert the violation as a defense if a financial institution were to bring an action to collect the consumer's debt.

The statute of limitations for a violation of TILA section 129 (requirements for certain mortgages), 129B (residential mortgage loan origination), or 129C (minimum standards for mortgages) is three years from the date of the occurrence of the

violation (as compared to one year for most other TILA violations). TILA section 130(e).

Moreover, TILA provides that when a creditor, assignee, other holder or anyone acting on such a person's on behalf initiates a foreclosure action on, or any other action to collect the debt in connection with a residential mortgage loan, a consumer may assert a violation of TILA section 129C(a) "as a matter of defense by recoupment or set off." TILA section 130(k). There is no time limit on the use of this defense and the amount of recoupment or setoff is limited, with respect to the special statutory damages, to no more than three years of finance charges and fees.

Criminal actions are not subject to the TILA one-year statute of limitations.

Regulatory administrative enforcement actions also are not subject to the one-year statute of limitations. Actions brought under section 129, 129B, or 129C and actions brought by a state attorney general to enforce a violation of section 129, 129B, 129C, 129D, 129E, 129F, 129G, or 129H, may be brought not later than three years after the date on which the violation occurs. Actions involving private education loans under 15 U.S.C. 1650(a) may be brought not later than one year from the due date of first regular payment of principal. TILA section 130(e).

However, enforcement actions under the policy guide involving erroneously disclosed APRs and finance charges are subject to time limitations by the TILA. Those limitations range from the date of the last regulatory examination of the financial institution, to as far back as 1969, depending on when loans were made, when violations were identified, whether the violations were repeat violations, and other factors.

There is no time limitation on willful violations intended to mislead the consumer. A summary of the various time limitations follows.

- For open-end credit, reimbursement applies to violations not older than two years.
- For closed-end credit, reimbursement is generally directed for loans with violations occurring since the immediately preceding examination.

## Rescission Rights (Open-End and Closed-End Credit)—Sections 1026.15 and 1026.23

The TILA provides that for certain transactions secured by the consumer's principal dwelling, a consumer has three business days after becoming obligated on the debt to rescind the transaction. The right of rescission allows consumer(s) time to reexamine their credit agreements and cost disclosures and to reconsider whether they want to place their homes at risk by offering it as security for the credit. A higher-priced mortgage loan (whether or not it is a HOEPA loan) having a prepayment penalty that does not conform to the prepayment penalty limitations (§§1026.32(c) and (d) and §1026.43(g) (subject to certain exclusions)) is also subject to a three-year right of rescission. Transactions exempt from the right of rescission include residential mortgage transactions (§1026.2(a)(24)) and refinancings or consolidations with the original creditor where no "new money" is advanced.

If a transaction is rescindable, consumers must be given a notice explaining that the creditor has a security interest in the consumer's home, that the consumer may rescind, how the consumer may rescind, the effects of rescission, and the date the rescission period expires.

To rescind a transaction, a consumer must notify the creditor in writing by midnight of the third business day after the latest of three events:

1. consummation of the transaction,
2. delivery of material TILA disclosures, or
3. receipt[27] of the required notice of the right to rescind.

For purposes of rescission, business day means every calendar day except Sundays and the legal public holidays (§1026.2(a)(6)). The term "material disclosures" is defined in section 1026.23(a)(3) to mean the required disclosures of the APR, the finance charge, the amount financed, the total of payments, the payment schedule, and the disclosures and limitations referred to in section 1026.32 (c) and (d) and 1026.43(g).

The creditor may not disburse any monies (except into an escrow account) and may not provide services or materials until the three-day rescission period has elapsed and the creditor is reasonably satisfied that the consumer has not rescinded. If the consumer rescinds the transaction, the creditor must refund all amounts paid by the consumer (even amounts disbursed to third parties) and terminate its security interest in the consumer's home.

A consumer may waive the three-day rescission period and receive immediate access to loan proceeds if the consumer has a "bona fide personal financial emergency." The consumer must give the creditor a signed and dated waiver

---

27. 12 CFR 1026.15(b) and 1026.23(b)(1) were amended to include the electronic delivery of the notice of the right to rescind. If a paper notice of the right to rescind is used, a creditor must deliver two copies of the notice to each consumer entitled to rescind. However, under the final rule on electronic delivery of disclosures if the notice is in electronic form, in accordance with the consumer consent and other applicable provisions of the E-Sign Act, only one copy to each customer is required.