**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| **CONSUMER FINANCIAL PROTECTION BUREAU,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 1:14-cv-00292-SEB-TAB** |
| **ITT EDUCATIONAL SERVICES, INC.,** | ) | |
| **Defendant.** | ) | |

**CONSUMER FINANCIAL PROTECTION BUREAU'S OPPOSITION TO DEFENDANT'S MOTION TO STAY DISCOVERY**

## INTRODUCTION

Defendant ITT Educational Services, Inc. ("ITT") has moved to stay discovery, including initial disclosures, pending the Court's ruling on ITT's motion to dismiss. Plaintiff Consumer Financial Protection Bureau (the "Bureau") opposes ITT's motion to stay as an unwarranted effort to delay the proceedings.

## BACKGROUND

ITT's motion to stay discovery is an effort merely to delay this litigation, which this Court should deny. ITT styles itself to this Court as a "small company," Mot. 8,[1] that can hardly withstand the burden of this suit. But, in fact, ITT is a public corporation listed on the New York Stock Exchange, with annual revenue of over a billion dollars, a market capitalization of nearly half a

[1] Defendant ITT Educational Services, Inc.'s Motion to Stay Discovery Pending a Ruling on its Motion to Dismiss; and Memorandum in Support, Dkt. No. 24, June 4, 2014 ("Mot.").

billion dollars, and average trading of three-quarters of a million shares per day. Moreover, as ITT disclosed in a recent filing with the Securities and Exchange Commission, ITT is the defendant in a lawsuit by the New Mexico Attorney General and subject to a Civil Investigative Demand ("CID") from a group of state Attorneys General, both of which significantly overlap with the information to be requested in this case, and thus ITT should already be working to produce much of the information the Bureau would seek in discovery here.

ITT holds the majority of the information relevant to this case, and therefore staying discovery would essentially stop the case in its tracks. ITT's attempt to stall this litigation through a stay is a tactic consistent with ITT's conduct during the investigation that preceded this litigation. ITT suggests in its brief that the Bureau could have continued its investigation rather than file suit; what had become plain during the nearly two-year investigation, however, was that ITT was slow-walking the Bureau's investigation. While it is true that ITT provided a significant page count of documents in response to the Bureau's CID dated May 18, 2012 (attached as Ex. 1 to ITT's Mot.), ITT actually provided very little of the information and documents requested. That CID contained 45 interrogatories; ITT answered *none*. That CID contained a request for eight written reports; ITT answered *none*. Of the 50 document requests in that CID, ITT responded to *only 10* and provided only a fraction of the documents requested; ITT even refused to produce more than a fraction of the set of documents it had already gathered and produced to the Senate Committee on Health Education, Labor and Pensions in the course of that Committee's 2010-2012 investigation of the for-profit college industry. Moreover, a significant volume of the documents ITT chose to produce were merely school catalogs that typically exceeded one-hundred pages each, and much of the production lacked metadata and was non-compliant with the Document Submission Standards of the Bureau. Then, in August 2012, ITT filed a petition challenging the constitutionality of the

process by which the Bureau's director was appointed and stopped cooperating with the investigation altogether.

In September 13, 2013, the Bureau sent ITT a new, more limited CID (attached as Ex. 2 to ITT's Mot.) in an effort to advance the investigation, which had already been open for nearly 18 months. ITT agreed to comply, and withdrew its petition, as by that time the Senate had confirmed the Bureau's Director. However, even with respect to the narrow 2013 CID, ITT produced only limited information, much of it duplicative. For example, ITT objected to providing information related to its financial statements or its manner of compensating its financial aid staff, based on the meritless argument that those areas are regulated by other government agencies. Moreover, ITT never agreed to provide a witness as a corporate representative to testify for an investigational hearing as to the topics in the September 13, 2013 CID. In its brief, ITT makes it sound as if the Bureau rushed the investigation process and did not give ITT a chance to cooperate. But, in fact, ITT had nearly two years to cooperate, and chose instead to drag its feet, to provide limited, selective, and duplicative information, and to make frivolous objections.

ITT is correct that the Bureau has sought information throughout its investigation from other sources; the Bureau was resourceful in its investigation, in part to compensate for ITT's failure to cooperate. But ITT remains the repository of much of the relevant information in this case that the Bureau still does not have.

In opposing this motion, the Bureau seeks the Court's assistance to advance this case at an expeditious pace.

## ARGUMENT

District courts have broad discretion over discovery, including the power to stay or compel it, as appropriate, in order "to secure the just, speedy and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Pursuant to Fed. R. Civ. P. 26(c), a party must show "good

cause" to obtain relief from discovery based on, among other things, "undue burden or expense." *Castrillon v. St. Vincent Hosp. and Health Care Ctr., Inc.,* No. 1:11-cv-00430-WTL-DML, 2011 WL 4538089, at *2 (S.D. Ind. Sept. 29, 2011). A court will "limit discovery if it determines that the burden of the discovery outweighs its benefit." *Tamburo v. Dworkin*, No. 04 C 3317, 2010 WL 4867346, at *3 (N.D. Ill. Nov. 17, 2010) (citations and internal quotation marks omitted). "The movant bears the burden of proof to show that the Court should exercise its discretion in staying the case." *Cloverleaf Golf Course, Inc. v. FMC Corp.*, No 11-cv-190, 2011 WL 2838178, at *2 (S.D. Ill. July 15, 2011). ITT has not met that burden.

**1. ITT's motion to dismiss does not amount to "good cause" to stay discovery.**

ITT's main argument in favor of a stay is simply that it previously filed a motion to dismiss. But "[t]he mere filing of a motion to dismiss does not automatically stay discovery." *New England Carpenters Health and Welfare Fund v. Abbott Labs.*, No. 12 C 1662, 2013 WL 690613, at *1 (N.D. Ill. Feb. 20, 2013) (citing *SK Hand Tool Corp. v. Dresser Indus.*, 852 F.2d 936, 945 (7th Cir. 1988)). "Had the Federal Rules contemplated that a motion under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect." *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990).

In fact, the filing of a motion to dismiss justifies a stay of discovery only in a limited number of cases. "[A] stay of discovery is generally only appropriate when a party raises a potentially dispositive threshold issue such as a challenge to a plaintiff's standing, or pending resolution of qualified immunity claims." *Tamburo,* 2010 WL 4867346, at *1 (citations omitted). However, even a "threshold issue," by itself, is not always enough to stop the wheels of justice, and ITT has cited no cases that regard constitutional challenges such as those raised in its motion to dismiss as providing grounds to stop a matter from proceeding expeditiously. "[A] motion to stay discovery will not be granted every time a potentially dispositive issue is placed before the court." *Builders Ass'n of Greater*

*Chicago v. City of Chicago*, 170 F.R.D. 435, 437, 439 (N.D. Ill. 1996) (denying stay of discovery where motion to dismiss raised standing issues); *see also Castrillon*, 2011 WL 4538089, at *2 (denying motion to stay discovery even where successful motion to dismiss would result in court's loss of jurisdiction over the case).

Moreover, ITT's motion to dismiss is without merit, and therefore provides no basis for slowing down this case. ITT's constitutional challenges to the existence of the Bureau and the laws that the Bureau enforces are highly unlikely to succeed. A sister court has already considered and rejected a claim that is virtually identical to ITT's first constitutional argument in this case, and the Bureau has provided ample justification for this Court to follow suit. *See Consumer Fin. Prot. Bureau v. Morgan Drexen, Inc.*, No. 13-1267, Dkt. No. 40, at 14 (C.D. Cal. Jan. 10, 2014) (attached as Ex. 1) ("the [Bureau] complies with the separation of powers principles contained in Articles I, II, and III of the Constitution."), *appeal dismissed*, No. 14-55333 (9th Cir. Apr. 11, 2014). ITT's other constitutional argument challenging the Consumer Financial Protection Act's prohibition on unfair or abusive acts and practices is entirely at odds with relevant Supreme Court and Seventh Circuit precedent and is similarly doomed to fail. *See* Pl.'s Opp. to ITT's Mot. to Dismiss at 7–10, Dkt. 25, June 12, 2014. ITT's remaining arguments for dismissal are fact-intensive, piecemeal challenges to the Complaint that are also unlikely to prevail, and so provide no basis for the stay ITT seeks. *See Cloverleaf Golf Course,* 2011 WL 2838178, at *4 (denying stay of discovery where "[t]he Court cannot presume that the motion to dismiss will be granted and at first blush it does not appear well founded"); *Cohn v. Taco Bell Corp.*, 147 F.R.D. 154, 162 (N.D. Ill. 1993) (there was no "justification in delaying discovery because of defendant's motion to dismiss since … the likelihood of the motion's total success is somewhat speculative") (citation omitted).

In addition to cases involving challenges to threshold issues such as standing and immunity, courts will stay discovery where motions to dismiss have been filed in particular types of complex

cases, such as antitrust actions or class actions. *See*, *e.g.*, *DSM Desotech Inc. v. 3D Sys. Corp.*, 08 CV 1531, 2008 WL 4812440, at *2 (N.D. Ill. Oct. 28, 2008) (antitrust); *Coss v. Playtex Prods., LLC*, No. 08 C 50222, 2009 WL 1455358, at *1,*5 (N.D. Ill. May 21, 2009) (class action for tort). This case raises none of those issues. To the extent that this case is complex, its complexity derives from two factors: the fact that many issues in this case will be issues of first impression, because the Consumer Financial Protection Act is a fairly new statute; and the fact that ITT is a large company with over 130 locations. With respect to the former factor, to the extent that issues remain after the motion to dismiss has been decided, that type of legal complexity is not atypical, and is no reason to delay discovery; as to the latter, ITT should not be able to use the size of its operations as a shield to sunlight. As noted above, even if discovery is significant in this matter, it involves issues that are substantially similar to those to which ITT is already responding and about which ITT has been on notice for over two years. Further, unlike the other cases cited by ITT in its motion to stay, this is a public enforcement action by the government, on claims private plaintiffs cannot assert, for unfair and abusive conduct.

Finally, it may be the case, as ITT claims in its brief, Mot. 5–6, that stays pending motions to dismiss have been more frequently granted "[f]ollowing the Supreme Court's recent adoption of a more rigorous pleading standard to spare defendants' the costs of discovery into meritless claims." *Dillinger, L.L.C. v. Elec. Arts, Inc.,* No. 1:09-cv-01236-SEB-JMS, 2010 WL 1945739, at *1 (S.D. Ind. May 11, 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007)). However, "*Twombly* and [*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)] do not <u>mandate</u> that a motion to stay should be granted every time a motion to dismiss is filed." *New England Carpenters*, 2013 WL 690613, at *3 (emphasis added) (citations omitted). Here, the Bureau's complaint contains detailed allegations that more than meet the standard set in *Twombly* and *Iqbal*, and therefore ITT should not be able to stop discovery in its

tracks by relying on cases that simply do not apply.[2]

**2. Staying discovery will unnecessarily delay this litigation.**

"Where the court finds that its interference in the discovery process is unlikely to significantly expedite the litigation, and may actually slow it down, it will decline to interfere." *Builders Ass'n of Greater Chicago*, 170 F.R.D. at 437 (citation omitted). Here, despite ITT's characterization to the contrary, ITT dragged its feet in providing information to the Bureau in the pre-suit investigation, and when it did respond, ITT provided only a small portion of the information requested. That conduct weighs against granting ITT's request for a stay of discovery here. *Id.* ("Although Rule 26(c) and (d) do give the court authority to stay discovery, this authority must be exercised to so as to 'secure the just, speedy and inexpensive determination of every action.'") (citing Fed. R. Civ. P. 1). Here, the "motion for a stay [is] purely a vehicle to stall or delay the inevitable search for the truth, as provided by the federal discovery rules." *Cohn*, 147 F.R.D. at 162. Therefore, as in *Cohn*, the Court here should reject the motion for a stay of discovery.

**3. Discovery in this case is not so burdensome that a stay is appropriate.**

In order to obtain a stay, ITT must show that the "burden of discovery outweighs its benefit." *Tamburo*, 2010 WL 4867346, at *3 (citations and internal quotation marks omitted); *see also EEOC v. Fair Oaks Dairy Farms, LLC*, No. 2:11 CV 265, 2012 WL 3138108, at *3 (N.D. Ind. Aug. 1, 2012) (court refused to stay discovery where motion to dismiss was pending because movant had failed to show that discovery would be overly burdensome). In this case, ITT is wrong that

---

[2] One of ITT's unavailing arguments for a stay of discovery is that the Bureau undertook "sufficient pre-litigation investigation to ensure that [this] enforcement action . . . [was] well supported," (citation omitted), and that "in bringing this action, the Bureau evidently believed that its claims were 'well supported' by evidence already in its possession." Mot. 10. The Bureau did indeed ensure that its claims were grounded in facts—facts that it alleges with sufficient particularity in the complaint in this case. Proper pre-suit investigation, however, is no substitute for discovery. *See S.E.C. v. Sargent*, 229 F.3d 68, 80 (1st Cir. 2000) ("[T]here is no authority which suggests that it is appropriate to limit the SEC's right to take discovery based upon the extent of its previous investigation into the facts underlying its case." (quoting *S.E.C. v. Saul*, 133 F.R.D. 115, 118 (N.D. Ill. 1990))).

discovery—particularly any discovery that would be engaged in prior to a decision on the motion to dismiss—would be so burdensome as to outweigh its benefit. First, the discovery necessary in this action would not be burdensome to a company like ITT. ITT claims that it is a "small company" for whom discovery in this case "would be crippling." Mot. 8. But as stated above, ITT is far from a small company—it is a multimillion dollar public corporation that has over 130 locations nationwide, in addition to running online operations and other related businesses. ITT is quite capable of collecting and producing the necessary information in this case. Second, ITT is required to collect and produce similar information in connection with other pending state matters that implicate some of the same subjects as this enforcement action, including a lawsuit brought by the New Mexico Attorney General, *King v. ITT Educ. Servs., Inc.*, 1:14-cv-00321 (D.N.M. Apr. 4, 2014) (motion for remand pending), and CIDs served by a group of state Attorneys General in January 2014, led by Kentucky Attorney General Jack Conway, which request information about ITT's "students and . . . practices, including . . . financial aid . . . student retention, graduation rates and job placement rates, as well as many other aspects of [ITT's] business." ITT Educational Services, Inc., Form 8-K, Report of Unscheduled Material Events or Corporate Event (Jan. 27, 2014) (attached as Ex. 2). Further, the Bureau made clear to ITT in its conference under Fed. R. Civ. P. 26(f) that it is willing to work with ITT to reduce the document review time for its counsel by, for example, jointly crafting search terms to find relevant documents and agreeing to a clawback provision covering any documents protected by the attorney-client privilege that are inadvertently produced.

Another red herring ITT raises in its brief, Mot. 7, is its alleged concern about the burden of producing information regarding the approximately 8,600 students harmed in this case. The Bureau can provide a list of names to ITT, which should easily be able to access the student information needed for this case from its files. To the extent any notice is required in connection with producing these documents pursuant to the Family Educational Rights and Privacy Act, 20 U.S.C. §1232g, ITT

can easily access contact information for these students through the servicer of the loans, which retains not only physical addresses, but also electronic mail addresses. Sending notice to this population, if required by statute, would not be a burdensome exercise.

Finally, ITT's argument that the Bureau will not be prejudiced by a stay of discovery is misguided. The Bureau has not brought this lawsuit for its own benefit, but rather to enforce the Federal consumer protection laws and to get relief for students who have been harmed by ITT's unlawful conduct; these students await the outcome of this matter and any compensation that will result. A delay in discovery would increase the likelihood that relevant information, including witness testimony, will not be preserved for trial, and would place the affected students at risk of further financial harm—such as defaults, finance charges, fees, and adverse credit reporting—until the matter is resolved. Beginning the discovery process now will expedite the resolution of this matter and ensure that no stakeholders are prejudiced by delay.

## CONCLUSION

ITT's motion to stay discovery should be denied.

Respectfully submitted,

s/ Nicholas F. B. Smyth
Cynthia Gooen Lesser (NY Bar #2578045)
Ethan Haim Levisohn (DC Bar #982702)
Nicholas F. B. Smyth (PA Bar #307972)
Maureen Elin McOwen (DC Bar #976749)
Office of Enforcement
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Telephone: (202) 435-9594
Facsimile: (202) 435-7722
e-mail: Cynthia.Lesser@cfpb.gov

*Attorneys for the Consumer Financial Protection Bureau*

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2014, a copy of the foregoing document, the Consumer Financial Protection Bureau's Opposition to Defendant's Motion to Stay Discovery, and the exhibits thereto, were filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Date: June 23, 2014

s/ Nicholas F. B. Smyth
Nicholas F. B. Smyth (PA Bar #307972)
Enforcement Attorney
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Telephone: (202) 435-9594
Facsimile: (202) 435-7722
e-mail: Cynthia.Lesser@cfpb.gov

*Attorney for the Consumer Financial Protection Bureau*