UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Civil Action No. 1:14-cv-00292-SEB-TAB |
| ITT EDUCATIONAL SERVICES, INC., | ) ) ) |
| Defendant. | ) ) |

**RESPONSE TO PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY**

Defendant ITT Educational Services, Inc. ("ITT") respectfully submits this response to the Consumer Financial Protection Bureau's September 8, 2014 "Notice of Supplemental Authority" (Dkt. 41). The "supplemental authority" that the Bureau identifies—an unreported memorandum opinion of the United States District Court for the Northern District of Illinois in *Illinois v. Alta Colleges, Inc.*, No. 14-cv-3786 (N.D. Ill. Sept. 4, 2014)—highlights the fundamental differences between the "in-house student loan program" that the *defendant* allegedly runs in *Alta* (Op. 3) and the *third-party* CUSO loans that are the subject of the Bureau's claims against ITT. Those core factual distinctions not only show that the *Alta* decision is inapposite, but they also illustrate why the Bureau's claims in this case must be dismissed.

In *Alta*, the State of Illinois sued Alta/Westwood College under the Illinois Consumer Fraud and Deceptive Business Practices Act for allegedly making misrepresentations in connection with Westwood's criminal justice program. Op. 2; *see also* Second Am. Compl., ¶¶ 455-73 (attached hereto without exhibits as Exhibit A). After the Bureau brought this action, the

1

Illinois AG amended its complaint to add claims for purported violations of the federal Consumer Financial Protection Act ("CFPA"). Op. 2; *see also* Ex. A, ¶¶ 474-93.

The Illinois AG alleges starkly different facts than the CFPB asserts here. The Illinois AG contends that Westwood runs an in-house student loan program, known as the "APEX program," that issues "institutional financing loans" directly to students and induces them to "sign Defendants' institutional financing contracts" through a variety of allegedly fraudulent, unfair, and abusive means. Ex. A, ¶¶ 89-90, 477. Unlike the third-party CUSO loans at issue here, APEX loans allegedly are offered and provided by Westwood, not independent lenders. *Compare* Dkt. 1, ¶ 18 (alleging various third-party "lenders"), *with* Ex. A, ¶¶ 7, 89, 128-30, 459-60, 476, 483, 487 (alleging in-house financial products). APEX loans also allegedly impose interest charges that students pay directly to Westwood. *See* Ex. A, ¶¶ 130, 461. Because the Illinois AG pleaded that Westwood itself originated the allegedly unfair and abusive student loans and provided them directly to its students, the district court concluded that the Illinois AG had adequately alleged that Westwood was subject to claims under the CFPA. As the court reasoned, "Plaintiff alleges that Westwood operates an in-house student loan program called APEX, which places Westwood squarely within the definition of 'covered person.'" Op. 2-3.

In contrast to *Alta*, the Bureau admits that a third-party lender—not ITT—originated the CUSO loans at issue in this case. *See, e.g.*, Dkt. 25, at 16 n.14; Dkt. 37, at 7. The Bureau also concedes that ITT received no fees or interest on any CUSO loan or Temporary Credit at any relevant time. Dkt. 25, at 27 n.19; Dkt. 37, at 7. There is no allegation that any student signed an "institutional financing contract" with ITT for a CUSO loan (*see* Dkt. 27, at 9 n.10). The Bureau also does not attempt to plead that ITT is an "alter ego" of the third party that offers, services, and owns the disputed CUSO loans, and the Bureau pleads no other legal theory under

which ITT could possibly be liable for the actions of that indisputably distinct entity. In short, *Alta*'s holding that the Illinois AG had adequately stated a CFPA claim concerning Westwood's "in-house student loan program" (Op. 2-3) hinges entirely on facts that are the opposite of those alleged here.

Furthermore, ITT has raised challenges to the Bureau's jurisdiction that were not presented in *Alta*. For example, the Bureau failed adequately to allege that ITT offered consumer financial products to students because ITT is not in the *profession* of offering loans. *See* Dkt. 37, at 8-9. The Bureau also failed adequately to allege that ITT "engaged significantly" in offering or providing credit that is "subject to a finance charge." *Cf.* Op. 3. Indeed, it is undisputed that ITT receives no interest or fees on third-party loans, Temporary Credit carries no interest or fees, and ITT does not handle more than one million accounts, as is required under the Bureau's regulations. Dkt. 37, at 1, 7 & n.8. And the Bureau has failed to allege an adequate basis for jurisdiction over ITT in connection with any "brokering," "financial advisory services," or "service provider" activities. *Id.* at 10-12. None of those pleading defects was addressed in *Alta*. *See* Op. 2-3.

Although the *Alta* court addressed Westwood's vagueness challenges to the CFPA, that discussion provides no guidance here because courts must "consider whether a statute is vague as applied to the particular facts at issue." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18 (2010); Dkt. 37, at 5. As discussed above, the particular facts at issue in *Alta* are very different from those alleged here. Among other things, the *Alta* claims center on allegedly fraudulent conduct, *see* Op. 4-5, 8, while the Bureau's claims here do not. Although fraudulent conduct is clearly prohibited, *Alta* does nothing to clarify how ITT could know what could be a prohibited "unfair" or "abusive" practice in this case.

3

Moreover, the *Alta* court's denial of Westwood's vagueness challenge turned on Westwood's failure to "contend that the statute inhibits its constitutionally protected activity." Op. 7.  Here, in contrast, the Bureau's attempt to enforce vague notions of "unfair" and "abusive" conduct in connection with third-party CUSO loans plainly infringes on ITT's constitutional rights, including its "constitutionally protected property interests in participating in federal student loan programs" (Dkt. 37, at 4); its First Amendment right to engage in truthful communications with consumers (*id.* at 5); its protected interest in not being subject to an enforcement action by an unconstitutional agency (*id.*); and its due process right not to face punishment for lawful conduct (*id.* at 11).  In sum, the *Alta* court's review of Westwood's vagueness arguments is inapplicable here.

For these reasons, ITT respectfully submits that *Alta* highlights the many reasons why the Bureau's claims against ITT should be dismissed.

Respectfully submitted,

ICE MILLER, LLP

By:   /s/ *Philip A. Whistler*
    Philip A. Whistler (#1205-49)

Thomas E. Mixdorf (#16812-49)
One American Square, Suite 2900
Indianapolis, IN  46282-0200
Telephone:  (317) 236-2100
Facsimile: (317) 236-2219
Philip.Whistler@icemiller.com
Thomas.Mixdorf@icemiller.com

| | |
|---|---|
| GIBSON, DUNN & CRUTCHER LLP<br>Timothy J. Hatch (*pro hac vice*)<br>333 South Grand Avenue<br>Los Angeles, CA 90071-3197<br>Telephone: (213) 229-7000<br>Facsimile:  (213) 229-7520<br>THatch@gibsondunn.com | GIBSON, DUNN & CRUTCHER LLP<br>Douglas R. Cox (*pro hac vice*)<br>Jason J. Mendro (*pro hac vice*)<br>Lucas C. Townsend (*pro hac vice*)<br>1050 Connecticut Avenue, N.W.<br>Washington, DC 20036-5306<br>Telephone: (202) 955-8500<br>Facsimile:  (202) 467-0539<br>DCox@gibsondunn.com<br>JMendro@gibsondunn.com<br>LTownsend@gibsondunn.com<br><br>*Attorneys for Defendant*<br>*ITT Educational Services, Inc.* |

**CERTIFICATE OF SERVICE**

I hereby certify that on September 19, 2014, a copy of the foregoing Response to Plaintiff's Notice of Supplemental Authority, including the accompanying exhibits, was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Philip A. Whistler*
Philip A. Whistler